(Not for Publication) (Docket No. 49, 50)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

_____ :
ERIC HOOTEN, :
                                        Plaintiff, : Civil No. 05-5002 (RBK)
     v. : **OPINION**
DAVID SCHAAFF, JAMES WILLIAMS, :
DEREK HAMEL, ALLIA LEWIS, JOHN :
NASH, D. SHIRES, MS. ZARSKI, TONY :
PRANTOW, and MR. PATELLO, :
                                       Defendants. :
_____ :

**KUGLER**, United States District Judge:

This matter comes before the Court upon motion by Defendants David Schaaff, James Williams, Derek Hamel, John Nash, D. Shires, Ms. Zarski, Tony Prantow, and Mr. Patello[1] for summary judgment on the Complaint filed by pro se Plaintiff Eric Hooten ("Plaintiff"). For the reasons explained below, the motion will be granted in its entirety.

**I. BACKGROUND**

The Court recites the facts in this case as set forth in Plaintiff's Complaint and in Defendants' Statement of Material Facts filed pursuant to Local Civil Rule 56.1. Because Plaintiff has not filed a counterstatement or responded to Defendants' Statement, the Court assumes that Plaintiff does not dispute Defendants' version of the facts.

---

[1] The correct spelling of this defendant's name is Dominic Pittello. (Defs.' Ans.)

1

Plaintiff is a federal prisoner in the custody of the Bureau of Prisons. He was incarcerated at Federal Correctional Institution Schuylkill ("FCI Schuylkill") from June 17, 2003 to July 9, 2004. While Plaintiff was at FCI Schuylkill, John Nash was the warden of the facility, and defendants Anthony Prantow, Dominic Pittello, Denise Shires, and Teresa Zarski ("FCI Schuylkill Defendants") were all employees of FCI Schuylkill with some correctional supervision over Plaintiff. Plaintiff filed an administrative complaint at FCI Schuylkill regarding exposure to environmental tobacco smoke ("ETS"), commonly known as secondhand smoke. Plaintiff complained that inmates were smoking in the common areas, particularly between 8:45 pm and 11:30 pm, when the common areas were open for TV viewing. He told staff that smoke would move through the ventilation system and complained that no one enforced the inmate smoking policy. FCI Schuylkill officers responded to Plaintiff's complaints, advising him that inmate smoking was prohibited in common areas and staff did in fact enforce the inmate smoking policy. Plaintiff indicates that he went to sick call at least five times while at FCI Schuylkill because of difficulty breathing, headaches, nausea, irritated eyes, and coughing related to the ETS exposure. Through his complaints and appeals, Plaintiff exhausted his administrative remedies on these ETS complaints at FCI Schuylkill.

After leaving FCI Schuylkill, Plaintiff was incarcerated at Federal Correctional Institution Fort Dix ("FCI Fort Dix") from July 9, 2004 to April 25, 2006, and again from June 13, 2006 to November 3, 2006. During Plaintiff's time at FCI Fort Dix, John Nash was the warden of the facility after transferring from FCI Schuylkill, and defendants David Schaaf, Allia Lewis, James Williams, and Derek Hamel ("FCI Fort Dix Defendants") were employees of the facility with correctional supervision over Plaintiff. Plaintiff similarly complained through the administrative

remedy process at FCI Fort Dix about exposure to ETS and lack of enforcement of smoking policies. Plaintiff alleges that "the hallways would be like a hazy morning with fog from the dense smoking." (Compl. ¶ 4.) He also alleges that the smoke alarms would sometimes be removed after 10 pm so inmates could smoke freely. He indicates that he sought medical attention approximately ten times at FCI Fort Dix for ETS-related complaints such as breathing problems, headache, nausea, irritated eyes, and coughing. The FCI Fort Dix Defendants responded to Plaintiff's administrative complaints, and Plaintiff exhausted his administrative remedies on his ETS complaints at FCI Fort Dix as well.

Defendants provide evidence of the inmate smoking policies at FCI Schuylkill and FCI Fort Dix. At FCI Schuylkill, inmates could smoke in two-man cells if both inmates were smokers and the door was closed. Other than that, smoking was prohibited inside facility buildings. At FCI Fort Dix, smoking was prohibited indoors for all buildings and was permitted outdoors in designated areas until October 24, 2005, when all smoking by inmates was banned at FCI Fort Dix. Staff are still permitted to smoke in outdoor smoke shacks.

Plaintiff also complained at FCI Fort Dix that his administrative remedy paper work was not being submitted or responded to in a timely manner. He alleges that he turned in an administrative remedy form in January 2005 to Defendant Williams, who "spun Plaintiff in circles" for two and a half months before informing Plaintiff that the form had been lost. Plaintiff filed another form on March 21, 2005, which Defendant Williams responded to 53 days later. Plaintiff also alleges that he submitted a grievance form to Defendant Lewis on August 26, 2005, which she returned to him to give to Defendant Williams on September 14, 2005. Plaintiff brought the form to Defendant Williams and asked for another form to file a grievance against

3

Defendant Lewis for her delay in processing his original grievance.  Defendant Williams gave Plaintiff a new form and did not accept the original form.  Plaintiff filled out his form against Defendant Lewis, gave that form to Defendant Williams, and took the ETS complaint to Defendant Hamel the next day.  Plaintiff received a response from Defendant Williams regarding Defendant Lewis on September 22, 2005.  Plaintiff claims these delays were retaliatory.  Plaintiff has exhausted his administrative remedies on this issue as well.

Plaintiff also alleges that he was retaliated against for filing administrative complaints about ETS by being placed into the Special Housing Unit ("SHU") at FCI Fort Dix for seven days in July 2005.  Plaintiff sought no administrative remedies on this claim.

Plaintiff filed his Complaint in this case on October 18, 2005, and he amended his Complaint to add Defendant Lewis on December 19, 2006.  Plaintiff alleges violations of his Eighth Amendment rights through deliberate indifference to the harms he suffered from exposure to ETS.  He also alleges retaliation in violation of the First Amendment for seeking administrative remedies, based on the delay in responding to his complaints and his placement in the SHU.  All Defendants now week summary judgment on all claims.

**II.     STANDARD OF REVIEW**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In evaluating the evidence presented by the parties, the Court "must view the facts in the light most favorable to

the nonmoving party and draw all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III. DISCUSSION

#### A. FCI Schuylkill Defendants

The FCI Schuylkill Defendants seek summary judgment on Plaintiff's claims alleging violations of the Eight Amendment at that Facility, arguing that this Court does not have personal jurisdiction over them. FCI Schuylkill is in Minersville, Pennsylvania, and the FCI Schuylkill Defendants were all served in Pennsylvania. (Docket Entry No. 6.)

Once a defendant raises the defense of lack of personal jurisdiction, the burden shifts to the plaintiff to prove by a preponderance of evidence facts sufficient to establish personal

jurisdiction.  Carteret Savs. Bank F.A. v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992).  The Court has personal jurisdiction over nonresident defendants to the extent authorized under New Jersey law.  The New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process, and so the due process requirements govern the Court's analysis.  Sunbelt Corp. v. Noble, Denton, & Assoc., Inc., 5 F.3d 28, 31 (3d Cir. 1993); Bailey-El v. Fed. Bureau of Prisons, Civ. No. 04-5780, 2006 WL 2792785, * 3 (D.N.J. Sept. 26, 2006).

Personal jurisdiction under the Due Process Clause depends on the "relationship among the defendant, the forum, and the litigation."  Imo Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).  Physical presence within the forum is not required; instead, the plaintiff must show that the defendant purposefully directed his activities toward the residents of the forum state, or otherwise "purposefully availed [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985); Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

Personal jurisdiction can be either in the form of "specific jurisdiction" or "general jurisdiction."  If the plaintiff's cause of action relates to or arises out of the defendant's contacts with the forum, the court is said to exercise "specific jurisdiction."  Id.  If the plaintiff's claim does not arise out of the defendant's contacts with the forum, the court is said to exercise "general jurisdiction"; under general jurisdiction, the contacts must be shown to be "continuous and systematic."  Id. at 259 n.2.

For a court to properly exercise specific jurisdiction under the Due Process Clause, a plaintiff must satisfy a two-part test.  First, a plaintiff must show that the defendant has constitutionally sufficient "minimum contacts" with the forum.  Second, the court must

6

determine in its discretion that to extend jurisdiction "would comport with 'traditional notions of fair play and substantial justice.'" Imo Indus., 155 F.3d at 259 (citing Burger King Corp., 471 U.S. at 474; Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)).

Courts may exercise general personal jurisdiction when a defendant's contacts with the forum arise from activities outside the scope of the instant action.  The Court can exercise general jurisdiction over a defendant only if the defendant is found to have "continuous and systematic contacts with the forum state." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).  This inquiry has been characterized as requiring the plaintiff to "show significantly more than minimum contacts." Provident Nat'l Bank v. Cal. Fed. Savs. & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987).

Plaintiff cannot demonstrate that the FCI Schuylkill Defendants had sufficient minimum contacts with New Jersey to permit this Court to exercise either specific or general jurisdiction over them.  First, the Court has been provided no information as to where the FCI Schuylkill Defendants reside, but according to their affidavits, all work at FCI Schuylkill.  Next, Plaintiff's Complaint alleges conduct by the FCI Schuylkill Defendants occurring in Pennsylvania.  He does not allege any contact between the FCI Schuylkill Defendants and New Jersey.  He does seem to allege that the harm he suffered in Pennsylvania continued when he was moved to New Jersey; however, the FCI Schuylkill Defendants' conduct was not "aimed" at New Jersey, and Plaintiff's ongoing harm is not sufficient to justify jurisdiction. Imo Indus., 155 F.3d at 265. Because Plaintiff has not pointed to any contacts between the FCI Schuylkill Defendants and New Jersey, the Court does not need to delve into the fair play and substantial justice inquiry.  The Court will dismiss Plaintiff's claims against the FCI Schuylkill Defendants for lack of personal jurisdiction.

B.      Retaliation Claim–Placement in the SHU

Nash and the FCI Fort Dix Defendants argue that they are entitled to summary judgment on Plaintiff's retaliation claim based on his placement in the SHU for seven days in July 2005 because Plaintiff did not properly exhaust his administrative remedies with regard to this claim.

Under the Prison Litigation Reform Act of 1995 ("PLRA"), codified at 42 U.S.C. § 1997e, prisoners are precluded from contesting prison conditions in federal court until exhausting "all avenues of relief available to them within their prison's inmate grievance system." Spruill v. Gillis, 372 F.3d 218, 227 (3d Cir. 2004) (holding that the failure to "properly" exhaust administrative remedies under the PLRA constitutes a procedural default). A plaintiff must pursue to completion all available administrative remedies, even if they are not "plain, speedy, and effective," do "not meet federal standards," or could not result in the relief requested in the suit. Id. at 524. Grievance procedures set forth in an inmate handbook constitute such a remedy, even if they are not formally adopted by any state administrative agency. Concepcion v. Morton, 306 F.3d 1347, 1354-55 (3d Cir. 2002). The prisoner must "carry the grievance through any available appeals process" before the remedies will be deemed exhausted. Camino v. Scott, No. 05-4201, 2006 WL 1644707, at *4 (D.N.J. June 7, 2006) (citing Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000); Spruill, 372 F.3d at 232). Failure to exhaust remedies mandates dismissal of the inmate's claim. Booth v. Churner, 532 U.S. 731, 739 (2001); Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000).

The Bureau of Prisons ("BOP") has an Administrative Remedy Program, which is a three-tier process available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement," except tort claims, inmate accident

compensation claims, and Freedom of Information or Privacy Act requests. See 28 C.F.R. §§ 542.10, 542.12(b). To exhaust an administrative remedy, an inmate must initially attempt to informally resolve the issue with staff by submitting a BP-8. See 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counselor)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. See 28 C.F.R. 542.14. The Warden is required to respond within 20 calendar days, but the inmate "may consider the absence of a response" within 20 days or 40 days, if the inmate has been informed in writing of the need for an extension, to be a denial. Id. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. See 28 C.F.R. § 542.15(a). The inmate may appeal to the General Counsel in the Central Office on a BP-11 within 30 days of the date the Regional Director signed the response. Id. Appeal to the General Counsel is the final administrative appeal. Id.

Defendants provide a declaration from Tara Moran, a legal assistant at FCI-Fort Dix. (Moran Decl.) Moran asserts that as part of her job, she works with a computerized system designed to track inmate grievances. She further indicates that Plaintiff did not file any grievances seeking administrative remedies for his placement in the SHU. (Moran Decl. ¶ 12.) Plaintiff does not dispute that he did not seek administrative remedies.

Because Plaintiff did not exhaust his administrative remedies with respect to his alleged retaliatory placement in the SHU, summary judgment is granted to Defendants on this claim.

C.  Retaliation Claim–Delay in Responding to Complaints

Nash and the FCI Fort Dix Defendants seek summary judgment on Plaintiff's retaliation claims based on the problems with the response to his administrative complaints, arguing that any delay in processing Plaintiff's complaints was of no consequence and moreover unrelated to his protected grievance activity.

Proof of a retaliation claim requires that Plaintiff demonstrate he engaged in protected activity, he was subjected to adverse actions by a state actor, and the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. Rauser v. Horn, 241 F.3d 330, 333 (3rd Cir. 2001) (adopting this framework in the prison context). There is no dispute that Plaintiff's activity in filing administrative grievances was protected. The next element requires Plaintiff to prove he was subjected to an adverse action "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). Plaintiff has provided no evidence that the mere fact of the delay constituted an adverse action. His claims were properly filed and responded to, and indeed Plaintiff was able to exhaust his administrative remedies. He has not shown that he was subjected to an adverse action that would deter someone from filing grievances.

Moreover, even if the Court found that the actions of Defendants Williams and Lewis were adverse to Plaintiff within the meaning of the First Amendment, Plaintiff has not shown that these delays were a retaliatory response to his protected conduct. Defendants Williams and Lewis assert that they did not retaliate against Plaintiff, and any delays resulted from legitimate reasons such as other priorities and Defendants' scheduled leave. (Williams Decl. ¶ 4, Lewis Decl. ¶ 17.) Plaintiff does not respond to Defendants' contentions. Because Plaintiff cannot

10

show that his actions substantially motivated the delay in processing his grievances, the FCI Fort Dix Defendants are granted summary judgment on Plaintiff's First Amendment retaliation claims.

        D.       **Eighth Amendment Claim Regarding ETS**

Nash and the FCI Fort Dix Defendants also seek summary judgment on Plaintiff's claims under the Eighth Amendment. An Eighth Amendment claim based on ETS exposure requires "requires proof of (1) exposure to unreasonably high levels of ETS contrary to contemporary standards of decency; and (2) deliberate indifference by the authorities to the exposure to ETS." Brown v. U.S. Justice Dep't., Civ. No. 07-3995, 2008 WL 857556 (3d Cir. Apr. 1, 2008) (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)).

For Plaintiff's claims to survive this motion for summary judgment, he needs to provide more than just allegations of unreasonable levels of ETS and lack of enforcement of smoking policies. He needs to show some objective proof that he was exposed to unacceptable levels of ETS and that correctional officers were deliberately indifferent to Plaintiff's health concerns. See Brown, 2008 WL 857556 at * 2 (affirming summary judgment where plaintiff made general allegations of unreasonable smoke levels and no enforcement of smoking policy but did not specify how exposure posed an unreasonable risk of damage to his future health). Plaintiff has not done so. Plaintiff has alleged that inmates would smoke in the hallway outside his cell door. (Compl. ¶ 2.) He does not allege that he was forced to share a cell with a smoker but rather that smoke would seep under his door and through the ventilation system. (Compl. ¶ 6.) The FCI Fort Dix Defendants have provided evidence that the facility did not have unreasonable levels of ETS. (Schaaff Decl. ¶ 9.) Though Plaintiff asserts that he sought medical attention based on

ETS-related problems, he provides no proof of any medical problems or connection between medical problems and ETS exposure. Cf. Atkinson v. Taylor, 316 F.3d 257, 265 (3d Cir. 2003) (affirming denial of qualified immunity on ETS claim where plaintiff introduced opinion of medical professional regarding plaintiff's symptom and causal connection to ETS exposure). Plaintiff has not met his burden to put forth evidence showing that he was exposed to an unreasonably high level of ETS. See, e.g., Griffin v. DeRosa, 153 Fed. App'x 851, 853 (3d Cir. 2005) (no liability for ETS exposure based on claims of smoking in inadequately ventilated restrooms); Rivera v. Marcoantonio, 153 Fed. App'x 857, 859 (3d Cir. 2005) (no liability for ETS exposure based on claims of claims of poor ventilation and lack of enforcement of smoking policy).

With regard to whether Defendants were deliberately indifferent to the alleged ETS problem, Defendants have asserted that they enforced the smoking policy and did not permit inmates or staff to violate this policy. (Williams Decl. ¶ 6,7; Lewis Decl. ¶ 7-9, 11, 13; Hamel Dec. ¶ 6-8.) Plaintiff's grievances regarding ETS exposure were responded to by prison officials, and in fact during Plaintiff's time at FCI Fort Dix the smoking policy at the facility was altered and inmate smoking at the prison was banned. (Nash Decl. ¶ 6-7.) The record belies any deliberate indifference on the part of the Nash and the FCI Fort Dix Defendants.

Because Plaintiff has not provided any evidence of unreasonably high levels of ETS or deliberate indifference on the part of the FCI Fort Dix authorities, summary judgment will be granted on Plaintiff's Eighth Amendment claim.

### IV.   CONCLUSION

As explained above, the Court dismisses the FCI Schuylkill Defendants for lack of

personal jurisdiction. Summary judgment is granted on Plaintiff's retaliation claim based on his placement in the SHU for failure to exhaust his administrative remedies. Because Plaintiff has provided no evidence that any Defendants retaliated against him, exposed him to unreasonably high levels of ETS, or were deliberately indifferent to alleged ETS exposure, summary judgment is granted to Nash and the FCI Fort Dix Defendants on the entirety of Plaintiff's Complaint.


Dated: 4-24-08                            /s/ Robert B. Kugler
                                                              ROBERT B. KUGLER
                                                              United States District Judge